ATLAS PORTLAND CEMENT CO. et al. v. SANDUSKY PORTLAND CEMENT CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,770.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR BURNING PULVERIZED COAL IN ROTARY CEMENT FURNACE.

The Hurry and Seaman patent, No. 645,031, for an apparatus for burning finely powdered coal in the making of cement clinker in a rotary furnace, construed, and, as limited by its terms and the prior art, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit in equity by the Atlas Portland Cement Company and the North American Portland Cement Company against the Sandusky Portland Cement Company. Decree for defendant, and complainants appeal. Affirmed.

Appellants, owners of patent No. 645,031, to Hurry and Seaman, March 6, 1900, on an application filed February 12, 1896, failed in their suit to hold appellee for an alleged infringement.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This patent covers an apparatus for burning finely powdered coal in the making of cement-clinker in a rotary furnace. Figure 1 is a general showing of the complete furnace. Figure 2 is a detailed exhibit of the burner *E* in Figure 1.

In the specification the inventors make the following disclosures and explanations:

"The invention relates generally to the burning of cement material to produce cement-clinker, and particularly to the burning of such material in rotary furnaces by means of pulverized carbonaceous fuel. The solid fuel, as coal, which we have used is pulverized to a considerable degree of fineness. In our regular practice on a large scale we reduce it to the condition of coarse flour, and in all cases it should be pulverized to such a degree of fineness that the particles tend to remain suspended in the furnace and will be consumed therein. The ash or solid residue will then be of such character that it is adapted to be carried out of the furnace with the gaseous products of combustion. The fuel so pulverized is carried into the furnace by an air-jet discharged from an injector at the delivery end of the furnace so arranged that the air-jet to which the pulverized carbonaceous fuel is supplied is located axially, or substantially so, with reference to the furnace, and the fuel is carried into the furnace in the form of a stream or core, occupying the central or axial portion of the furnace and around which additional air is supplied to maintain a perfect or substantially perfect combustion. This mode of operation is advantageous and beneficial results in the burning of cement into clinker are obtained for the following, among other reasons: The stream or core of fuel which is carried into the furnace by the air-jet and around which air is supplied to support combustion produces a core of fuel in combustion which by radiation heats the surrounding interior walls of the furnace equally, or substantially so, at all points. Sim-

ilarly the cement material which is constantly descending through the rotary furnace upon the changing lower interior surface thereof is uniformly heated by radiation to the high temperature required to burn the cement material into cement-clinker.  The jet of flame does not impinge upon the wall of the furnace, and destructive action thereupon for that reason does not occur, and similarly the jet of flame does not impinge upon the cement material in process of transformation into clinker, and the material or clinker is not injured by having driven or deposited into it any considerable amount of unconsumed or solid residue of combustion, the presence of which would impair the quality of the cement.

"So far as we are aware, we are the first to successfully and practically burn cement material into cement-clinker by the use of pulverized carbonaceous fuel injected into the rotary furnace by means of an air-jet.

"Prior to our invention in those instances where the attempt has been made to burn pulverized carbonaceous fuel in nonanalogous arts, the fuel has been blown into the furnace in a diffused cloud, which has been thrown directly against some one of the interior walls of the furnace and which has been diffused, so as to fill the combustion-chamber.  To so introduce the fuel into a rotary cement-furnace would be objectionable, and results equally as good as those attained by us could not be produced.  We have demonstrated by constant practice on a large scale that the best results are produced by introducing the pulverized fuel by means of a jet of air of small volume and relatively-high pressure—say, for instance, 20 pounds to the square inch, or thereabout—furnished by a suitable compressor, and by supplying around the centrally-disposed stream or core of fuel in combustion additional air to support perfect combustion.  In this way we obtain an intense heat, by which the cement material is uniformly and thoroughly burned to cement-clinker.  The walls of the furnace are not injured, since this intense jet or stream of fuel in combustion does not impinge against them, while they are by radiation substantially uniformly heated.  At the same time the quality of resulting cement-clinker is not injured by being irregularly burned or by having the solid residue of combustion driven into or mixed with it.  The velocity or pressure of the jet of air which carries the fuel into the furnace is such that, together with the natural or additional draft of the furnace, the unconsumed solid residue of combustion substantially all passes out of the furnace with the gaseous products.  At least this occurs to such extent that the presence of such solid residue, if any, in the cement-clinker is not observable.

"In the organization set out in detail in the drawings and hereinafter described the axis of the pulverized-fuel injector forms a slight angle with the axis of the rotary furnace and the jet of air carries the pulverized fuel into the furnace in the form of a stream or centrally-disposed core that extends a considerable distance, if not throughout the length of the furnace.  The effect of the draft and the conditions of the additional surrounding air-supply are, however, such that the jet or stream does not impinge against the lower wall of the furnace, but rises slightly and is maintained in general axial relation thereto.

"While our experience demonstrates that the core or stream of fuel in combustion is most effective of beneficial results when it occupies a central position in the furnace, variations to an extent from these conditions are not fatal to good operation and the production of quite good results, nor would such variations constitute a departure from the principles of our invention as hereinafter claimed.

"In naming a pressure of 20 pounds for the air-jet by which the pulverized fuel is introduced into the furnace, as described, and by the expression 'high pressure' in our claims, we do not intend to confine ourselves to that particular pressure, because the pressure may be less or greater.

"The manner above described of burning cement material into cement-clinker in a rotary furnace with pulverized carbonaceous fuel is new.  The high-pressure air is employed to forcibly carry the powdered fuel in a long compact stream into the axial or central portion of the furnace.  The volume of air so used need be but a small percentage of that required to support combustion—say two (2) per centum or less—and at the same time it causes the small high-pressure injector to draw in sufficient air, with that supplied

by the natural draft through the furnace, to make up the deficiency to produce perfect combustion of the fuel. By using this small percentage of high-pressure air for injecting the finely-pulverized fuel the mixture in the burner or injector is nonexplosive, and hence its use is perfectly safe. Furthermore, the use of this high-pressure air produces an effective vacuum at a point in the burner where the fuel is introduced, and hence all danger of the fuel clogging is obviated. In this manner we have found from continued daily practical use that it is entirely practicable to produce an intense flame through substantially the whole length of a rotary roasting-furnace 60 feet long and maintain the walls of the furnace at the white heat necessary to produce a high grade of cement containing so small a percentage of the solid residue of the products of combustion as to require no change in the proportions of the mixture to form the same grade of cement as might be made in the absence of the solid residue.

&ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;      &ast;

"Before entering into a detailed description of the apparatus for roasting cement material, it may be premised that in the manufacture of cement, so far as the apparatus as herein shown is concerned, the cement material is fed in a continuous stream into the roasting-furnace, preferably an inclined rotary furnace, with the inflammable mixture or flame entering the furnace at its exit end and projected therethrough toward the entrance end of the material or stack in a direction opposed to the onward travel of the material being roasted. In its passage through the furnace the material gets hotter and hotter until it gets within the hottest zone of the flame, when the particles of the raw material combine and form the cement-clinker, in which condition the red or white hot clinker masses pass, preferably, into a conduit consisting of a rotary cylinder for further treatment. A natural current of air passes through the conduit, becomes highly heated by the presence of the hot clinker therein, and passes thence to the furnace to support combustion of the carbonaceous fuel injected therein by the burner hereinafter described.

"The apparatus in the preferred, but not necessary, embodiment of the invention, as shown in Fig. 1, consists of a rotary cylindrical furnace A, comprising an exterior metallic shell or casing lined with fire-brick and mounted in a horizontally-inclined position having tracks a, which bear upon roller-bearings b, rotary motion being imparted to the furnace by a pinion c, meshing with a toothed wheel d on the furnace-shell, the pinion being driven in any proper manner, as from a driven worm-shaft e and worm f. The upper or entrance end of the furnace A projects into the upper end of a vertical chamber B, forming at its lower portion an ash-pit and having connection with a stack C for the escape of the waste heat and such solid products of combustion as may be carried by the draft, while the opposite or exit end of the furnace projects into an exit-chamber D, having an inclined floor or chute g for leading off the hot clinker falling from the furnace. The two chambers B and D are formed by masonry lined with fire-brick to withstand great heat. The chamber B has an opening h, closed by a door directly opposite the entrance end of the furnace, to view, if need be, the interior of the furnace, and the lower portion of the chamber below the entrance of the furnace forms the ash-pit, to which access may be had through a lower opening i, closed by a door, the communication of the chamber with the stack being had through an opening j, preferably at the side of the chamber. This chamber B also has a conduit m, water-jacketed, if need be, leading from top of the chamber to the entrance end of the furnace for the feed thereto of the material from any suitable source of supply. The chamber D is formed with an opening 10 in line with the open end of the rotary furnace A, which opening is continued by a cylindrical fire-brick-lined chamber 12, supported by a trolley 13, adapted to travel on the track 14, with the chamber longitudinally away from the chamber-opening 10 for access to the end of the furnace. Normally this combustion-chamber 12 will be bolted to the extreme wall of the chamber D, as shown, to prevent accidental movement and to stop the ingress of cold air to the furnace. The outer end of the chamber 12 is closed by a plate 15, to which the end of the burner E is secured, as is best seen in Fig. 2, which when in operation, as will be presently described, injects the powdered fuel with the small volume of high-pressure air to form and maintain a long intense heating-flame through the rotary furnace A.

The inclined floor or chute *g* of this exit-chamber *D* leads the red-hot and freshly-made clinker directly into the entrance end of a conduit *F*, consisting of a horizontally-inclined rotatable cylinder, through which the hot clinker is more or less slowly conducted to its exit end against a natural draft of air therethrough and which is thereby intensely heated to pass upward into the furnace to aid and support the combustion of the fuel injected by the burner *E*. The cylindrical conduit *F* is mounted like the furnace *A* to revolve on roller-bearings *n* and rotated by a pinion *o*, meshing with a toothed wheel *p* on the cylinder, the pinion being driven in any proper manner not necessary to describe.

"The more or less open connection between the cylindrical conduit *F* and the exit from the chamber *D* is closed against ingress of cold air by a fixed shield *16*, closely fitting the periphery of said conduit, and in like manner the connection between the exit end of the furnace *A* and the chamber *D* is closed by a shield *17*, these shields permitting the complete utilization of the very hot air, which under a natural and induced draft passes onward from the conduit *F* through the rotary furnace to support the combustion of the fuel injected by the burner into such furnace. A portion of this heated air is diverted from passing directly into the chamber *D* and is conducted by a pipe *18*, connected one end to the shield *16* and the other end detachably connected coincident with an opening in the bottom of the chamber *12*, so that a portion of the heated air needed to support the combustion of the fuel injected by the burner meets such fuel somewhat earlier than the remainder of the heated air to become more or less intimately mixed with the fuel before it enters the furnace.

"An improved form of burner *E*, capable of injecting and burning pulverized fuel with a limited volume of high-pressure air as the injecting fluid, is shown in detail in Figs. 2, 3, and 4. Said burner consists of a fuel-receiving chamber *20*, a high-pressure-air conduit *21*, leading to said chamber, and a mixture-directing tube *22*, leading from said chamber, the longitudinal axis of the tube being coincident with the axis of the air-conduit. The chamber *20*, as shown, is of cylindrical contour with vertical heads and having at its upper end a spout *23*, forming a portion of the vertical passage for the fuel from the feeding device *G*. (See Fig. 5.) Its front wall or head has an opening *24*, in which is fitted the rear end of the directing-tube, and in its rear head an opening in which is fitted the forward end of the air-conduit. The mixture-directing tube *22* has its rear end projecting a short distance into the fuel-receiving chamber, the opening of said tube slightly contracting and then gradually enlarging toward the furnace into the full diameter of the tube. The rear portion of this tube has a flange *25* for bolting to the front wall of the chamber *20*. The front end of the tube is screw-threaded into an enlarged conical or bell-shaped head *26*, whose front end is screw-threaded into a plate *27*, secured to the end plate *15* of the chamber *12*. The larger rear end of the bell-shaped head is formed with air-openings *28*, surrounding the front end of the tube *22*, through which openings a limited quantity of atmospheric air is drawn into the bell-shaped head to pass onward with the fuel injected into the combustion-chamber *12*.

"The air-conduit *21* consists of a tubular shell *30*, terminating within the fuel-chamber in a contracted nozzle or nosepiece *31*, screw-threaded to the end of the conduit, and the opposite end of the conduit has a smaller central perforation *32*, partially screw-threaded to receive a central spindle *33*, forming a needle valve, with its forward portion having radially-projecting guides and its end controlling the size of the orifice through the nose-piece *31* and its outer end passing through a stuffing-box *35* in the outer end of the air-conduit and having a handle *34* for adjusting said valve. The air-conduit is supported by a casing *36*, that is flanged at its forward end and bolted to the rear head of the fuel-chamber *20*. Intermediate between said end of the casing and the chamber is interposed the flange of an internally-screw-threaded ring or nut *37*, the threads of which are engaged by the forward threaded end of the air-conduit, the outer end of the shell *30*, forming said conduit passing through a gland *39* in the casing and having grasping projections *38* to adjust the shell within the casing with respect to said nut to vary the extent of projection of the nose-piece end thereof within the chamber *20*.

"The casing *36* is formed with an annular chamber *40* in communication with the high-pressure supply-pipe *41*, whose end is screwed into the side of the casing (see Fig. 3), and said chamber communicates with the air-conduit *21* through openings *42* in the shell *30*. In addition to the outer stuffing box or gland *39*, which is located at one side of the annular chamber *40*, there is provided another packing *43* on the opposite or inner side of said chamber, the two packings being separated by a spacing-ring *44*, so that both packings may be tightened by the single outer gland *39* to prevent the escape of the high-pressure air in either direction along the shell *30*. The spacing-ring has lantern-openings, which permit free passage of the air from the annular chamber to the air-conduit *21*.

"In addition to the air admitted through the openings *28* to the bell-shaped head *26* the fuel-receiving chamber is provided in its rear head or wall with a plurality of openings *45* (see Figs. 2 and 4) to admit a limited quantity of atmospheric air to said chamber to intimately mix with the fuel being injected forward through the tube *22*. These openings are capable of being varied in size by an adjusting-ring *46*, supported on the rear head of the chamber *20* concentric with the axis of the air-conduit *21* and having openings *47*, adapted to register with said openings *45* in the chamber. The ring may be turned in any desired manner, as by a worm *48*, engaging worm-teeth *49* on the periphery of the ring.

* * * * * * * * * *

"With the apparatus thus constituted a continuous uniform quantity of pulverized fuel in the form of a cloud is fed to the burner *E*. The high-pressure air is supplied by an air-compressor *II* (see Fig. 1) to the air-conduit *21* of the burner, say, at about the pressure of 20 pounds to the square inch, the volume issuing from the nozzle thereof being limited, and may be still further lessened by the adjustment of the valve *33*. From practical use of this apparatus we have found that somewhat less than 2 per cent. of the air necessary to support complete combustion of the pulverized fuel injected is only needed to cause the fuel to be carried fully into the roasting-furnace. The use of this limited volume of high-pressure air for the injecting fluid causes the fuel to be injected in a long compact body, the particles of which are held suspended in the blast comparatively close together, so that during combustion a long concentrated intense flame is produced capable of most thoroughly maintaining the lining of the furnace at the white heat necessary to form a high grade of cement. The fuel thus being injected into the furnace with simply enough fluid to suspend its particles and carry the fuel onward, the vacuum induced by the force of the jet may cause independent supplies of atmospheric air to move onward with the fuel, such supplies being added at separate points along the travel of the injected fuel until finally when the fuel reaches the furnace, and is in the presence of the natural draft of heated air therethrough sufficient air will be present to support perfect combustion. The vacuum produced in the fuel-chamber by the jet of high-pressure air passing from the nozzle *31* into the tube *22* is such as to carry every particle of fuel fed to the fuel-chamber by the feeding device described into said tube, so that after long use no fuel has been found to remain in the bottom of said chamber. This vacuum, which has been found to be equal to from five to six pounds, serves to hasten the feed of the fuel down the feed-tube *1* into the fuel-chamber, prevent clogging in said tube, and also serves to draw in such air behind the fuel as will be permitted to enter through the openings *45*. The air, it should be understood, admitted by the openings *45* and *28* is only a small percentage of the total amount of air needed to support combustion of the quantity of fuel injected by the burner into the furnace, it being the intention to rely upon the natural current of heated air passing from the conduit *F* into the rotary furnace for sufficient air to support combustion. In addition to the effect of this limited volume of high-pressure air in forming a long intense flame, it is apparent that in the use of the burner there is at all times insufficient air combined with the pulverized fuel while in the burner and its adjuncts to form an explosive mixture, so that its use is never unsafe. The force of the injected fuel, together with the natural draft through the roasting-furnace toward the chamber *B*, is such that we have found practically all of the solid residue of combustion to be carried into said chamber *B* to either es-

cape up the stack $C$ or to fall into the ash-pit, and hence no change in proportions of the cement materials fed to the furnace has been found necessary."

Fourteen claims are made. Nos. 10 to 14 are for combinations including particular means for feeding the pulverized fuel to the burner. As these are not alleged to be infringed, they and the parts of the specification relating thereto are omitted. Claims in suit read as follows:

"1. The combination with a furnace having an elongated combustion-chamber, of means for injecting axially thereinto a jet of air of high pressure and small volume, means for feeding to such air-jet pulverized carbonaceous fuel which is carried by and with the air-jet into the furnace in a long and relatively-compact stream of less cross-section than the combustion-chamber, and means for supplying an additional volume of air to the furnace whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"2. The combination with a furnace having an elongated combustion-chamber, of means for injecting axially thereinto a jet of air of high pressure and small volume, means for feeding to such air-jet pulverized carbonaceous fuel which is carried by and with the air-jet into the furnace in a long and relatively-compact stream of less cross-section than the combustion-chamber, means for supplying around said air-jet on its way to the furnace an additional volume of air, and means for supplying a further volume of air to the furnace, whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"3. The combination with a rotary cement-furnace having an elongated combustion-chamber, of means for injecting axially thereinto a jet of air of high pressure and small volume, means for feeding into the path of said air-jet pulverized carbonaceous fuel suspended in air so as to form a fuel-cloud of uniform or substantially-uniform density, which is carried by and with the air-jet into the furnace in a long and relatively-compact stream of less cross-section than the combustion-chamber, and means for supplying a further volume of air to the furnace, whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"4. The combination with a rotary cement-furnace having an elongated combustion-chamber, of means for axially injecting thereinto a jet of air of high pressure and small volume, means for feeding into the path of said air-jet pulverized carbonaceous fuel suspended in the air so as to form a fuel-cloud of uniform or substantially-uniform density which is carried by and with the air-jet into the furnace in a long and relatively-compact stream of less cross-section than the combustion-chamber, means for supplying around said air-jet on its way to the furnace an additional volume of air and means for supplying a further volume of air to the furnace whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"5. The combination with a rotary cement-furnace having an elongated combustion-chamber, of means for feeding material to be treated therein at one end thereof, a conduit connected with the other or delivery end through which the material discharged from the furnace passes, means for axially injecting into the delivery end of the furnace a jet of air, means for feeding to said air-jet pulverized carbonaceous fuel which is carried by and with the jet into the furnace, and a stack or draft device connected with the feed end of the furnace by which air is drawn into the furnace through the discharge-conduit in contact with the heated material therein, whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"6. The combination with a rotary cement-furnace having an elongated combustion-chamber, of means for feeding material to be treated therein at one end thereof, a conduit connected with the other or delivery end through which the material discharged from the furnace passes, means for injecting

axially into the delivery end of the furnace a jet of air of high pressure and small volume, means for feeding to said air-jet pulverized carbonaceous fuel which is carried by and with the jet into the furnace in a long and relatively-compact stream, and a stack or draft device connected with the feed end of the furnace by which air is drawn into the furnace through the discharge-conduit in contact with the heated material therein, whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"7. The combination with a rotary cement-furnace having an elongated combustion-chamber, of means for feeding material to be treated therein at one end thereof, a conduit connected with the other or delivery end through which the material discharged from the furnace passes, means for injecting axially into the delivery end of the furnace a jet of air of high pressure and small volume, means for feeding to said air-jet pulverized carbonaceous fuel which is carried by and with the jet into the furnace in a long and relatively-compact stream, means for supplying around said jet on its way to the furnace a further volume of air to support combustion in the furnace, and a stack or draft device connected with the feed end of the furnace by which air is drawn into the furnace through the discharge-conduit in contact with the heated material therein, whereby a core of pulverized fuel in combustion surrounded by air to support combustion is produced in the furnace to uniformly heat the walls of the furnace by radiation without impinging thereupon.

"8. The combination with a rotary cement-furnace having at one end a draft device or stack and means for feeding material to be burned into the furnace, and at the other end a delivery-opening for the discharge of the material, of means for axially injecting into the delivery end of the furnace a jet of air and means for feeding to said jet pulverized carbonaceous fuel, whereby a core of pulverized fuel in combustion is produced in the furnace to by radiation and without impingement thereupon uniformly heat the walls of the furnace and the material passing therethrough.

"9. The combination with a rotary cement-furnace, of means for axially injecting into its delivery end a jet of air, means for feeding to said jet pulverized carbonaceous fuel which is carried by and with the air-jet axially into the furnace, and means for supplying around the jet or stream of air and pulverized fuel additional air to support combustion, whereby a core of pulverized fuel in combustion is produced in the furnace to by radiation and without impingement thereupon heat the walls of the furnace."

Prior patents, discussed at length by the experts, include: No. 111,614, T. R. Crampton, February 7, 1871; No. 111,615, T. R. Crampton, February 7, 1871; No. 169,338, J. K. Caldwell, November 2, 1875; No. 234,395, W. D. Dickey, November 16, 1880; No. 238,852, D. Church, March 15, 1881; No. 248,772, J. G. McAuley, October 25, 1881; No. 268,035, J. G. McAuley, November 28, 1882; No. 274,778, J. B. Hyde, March 27, 1883; No. 327,210, W. Westlake, September 29, 1885; No. 340,357, F. Ransome, April 20, 1886; No. 438,852, A. Mason, October 21, 1890; No. 441,689, J. G. McAuley, December 2, 1890; No. 464,514, J. F. De Navarro, December 8, 1891; No. 11,224, J. F. De Navarro, February 9, 1892; No. 531,742, J. F. De Navarro, January 1, 1895; No. 550,619, Hurry & Seaman, December 3, 1895; No. 551,098, W. M. Russell, December 10, 1895; and British letters patent No. 2,539, T. R. Crampton, August 13, 1868; No. 1,575, Charles W. Siemens, May 21, 1869; No. 3,504, T. R. Crampton, December 3, 1869; No. 2,438, T. R. Crampton, June 22, 1877.

William A. Redding and Edward Rector, for appellants.
Francis W. Parker, for appellee.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Two thousand pages of record and six hundred of argument (approximately) cannot be reflected in detail within the limits of an opinion

of reasonable length. After all, an opinion in a patent case is a special finding of facts and thereupon an application of the law. So we shall come at once to the finding of ultimate facts, to which we are led by an extended examination of the record and consideration of the arguments, without setting forth the conflicts of assertions and of theories in the evidence.

Prior to 1896 the calcining of cement materials in rotary furnaces had been fully developed. From Figure 1 of the patent, take away removable chamber *12* (which appellants, by an argument we accept for the purposes of this case, eliminate from the claims in suit) and place the burner *E* with the plate *15* at the entrance *10*, and thereby the structures of the prior art are exactly brought to view, except that *E* would then appear as an injector of oil or gas, instead of powdered coal.

It was known that the calcining of cement materials required very high temperature. This was obtained by the rapid and complete combustion of the fuel. An atomizer injected a stream of mingled air and particles of oil. The plant had a large and tall stack. The rotary kiln (60 feet and upwards in length) was itself a direct and unobstructed flue leading into the stack. Large volumes of heated air were brought in through the "conduit *F*" to effect the rapid and complete combustion of the fuel stream. The current of the kiln was naturally slowest at the circumference, growing more and more rapid toward the axis. Along the axis therefore the injected fuel stream was carried, drawing upon the enveloping stream of air to complete the combustion, and forming a long candle-like flame that heated the walls of the kiln and the cement materials by radiation rather than by direct impingement of the fuel while yet unconsumed.

Use of fine and dry coal for heating purposes was old. The smaller the particles, the greater their surface in relation to weight and the easier their sustainability in a current of air. Means had been employed for "converting the solid fuel into an impalpable powder to which the term 'floating' might be applied."

Burners or injectors for using the impalpable coal powder for heating purposes had been devised. Some of them are shown in the following cuts from the Westlake patent for "feeding fine fuel."

Combinations of such coal injectors with boiler furnaces and smelting furnaces had been made. McAuley's combination, for example, was this:

*Fig. 2.*

Burning powdered coal in boiler furnaces and the like was not commercially successful. Not because the feeding and injecting apparatuses would not work; not because the powdered fuel would not thus burn and produce sufficient heat; but because in the obstructed passages and turns of such furnaces the fuel stream in combustion directly impinged upon fire arches or other parts and melted them down.

Appellants' assignors were not the fathers of the conception of adapting a coal injector for use in the rotary cement kiln in place of the oil injector. Siemens had patented in England a combination of a rotary kiln for calcining ores and cement materials and an injector for burning gas and also an injector for burning powdered coal. The latter is thus illustrated:

FIG. 1ᵃ

Of this Siemens said:

"If pulverized or liquid fuel is employed in place of gas an arrangement of the nature shown in Figure 1a may be employed, where the fuel is introduced in a continuous stream or in small quantities into the receiver *1*, whence it is blown by preference by a steam jet *2* so as to issue in a divided condition through the pipe *3* into the end of the rotating drum *A*, where it enters into combustion with the heated air passing in through the passages *F*, as before described."

Crampton also had an apparatus of the same general principle:

He stated:

"I prefer to heat the chamber by injecting into it a mixture of air and fine-ly powdered carbonaceous material, in the manner described in the specifica-tions of previous patents granted to me, and now well known and employed for heating revolving puddling furnaces."

Neither the Siemens nor the Crampton patent, in its lifetime, made any impress upon the commercial manufacture of cement. That either of them was impracticable we do not find.

From 1896 on there has been an immense and increasing consump-tion of cement. This has come rather from the great impetus to building and business in general during these times than from the disclosures of the Hurry and Siemens patent in 1900.

Prior to the issuance of the patent the applicants were burning pow-dered coal in rotary cement kilns at the Atlas plant by means of the high-pressure injector described in their specification. About this time there was a very large (200 to 300 per cent.) increase in the price of petroleum, and a general uncertainty arose as to future supplies. In some localities where the supply seemed assured and the price satis-factory the use of oil injectors has continued. But most of the ce-ment makers were confronted with the desirability, if not necessity, of getting a cheaper fuel. At this time many practical cement makers, including directors of appellee's operations, were under a general be-lief, without any investigation of the matter, that powdered coal could not be used successfully in cement manufacture. Possibly a few makers, outside the Atlas plant, learned something of the particular apparatus by which the Atlas result was obtained, though the record does not clearly convict any one. But many, including appellee, must be acquitted of having any knowledge except that powdered coal was being used in the actual commercial manufacture of cement clinker at the Atlas works. They had then (before 1900) in their plants the complete present-day rotary kilns in operation with oil injectors. These men, skilled in the arts involved (the art of building cement plants and the art of burning cement clinker in rotary kilns with fuel-oil injectors), knew how much cement material was fed into the upper

end of the kiln, how long it took the material to work down to the discharge end, how much oil in relation to finished product had to be carried in the form of fine particles by the air current into the suction of the kiln-and-stack draft, and how the flame, the walls of the kiln, and the cement materials appeared during the calcining process. Their problem was to substitute for the oil injector a coal injector that would give practically the same result in their existing rotary kilns. For this purpose they could turn to the known prior-art coal injectors. While McAuley and Westlake showed forms of coal injectors and Siemens and Crampton asserted the applicability of such injectors to the rotary kiln, none answered certain particular questions on which would depend the success of the coal flame in producing substantially the result of the oil flame. In relation to kiln and stack what should be the dimensions of the blower and the air nozzle? What the capacity of the conveyor for feeding the impalpable coal powder to the air blast? What the size of the burner tube for delivering the stream of mingled air and particles of coal into the kiln? And beyond structural details what should be the speed of the blower in relation to that of the coal conveyor? How much coal per unit of time should be fed? What proportion of the total air should come through the blower and what through conduit $F$, in order that the fuel stream should be projected a sufficient distance within the vortex of the kiln-and-stack suction? There were the appliances, and the desired result was known. How attain it? Cut and try. And so these men, skilled in the art of calcining cement materials in their rotary kilns by the use of oil injectors, tested the interdependent matters of coal feed and air supply, as above suggested, and presently their experience as practical cement burners gave them control of the operative relations between their existing rotary kilns and the coal injectors of the McAuley and Westlake types. On the average about 90 days were required to achieve the final adjustment of the parts and the ultimate control of the flame. And not one instance of failure is recorded.

Our conclusion from the file-wrapper is that the Patent Office, though some of the most potent references were not before it, rejected all pretensions that the applicants were entitled to a monopoly of a generic combination of a rotary kiln and a coal injector. Applicants sought to avoid the combination of coal injectors (by fan or blower) with boiler furnaces by alleging that the flame, diffused by fire-arches and other obstructions, was not the flame they obtained in the rotary kiln. Therefrom the inference would seem to be that a fuel stream from a McAuley burner would be too diffuse to work when injected into the unobstructed vortex of the kiln-and-stack draft. If this mistaken urge was influential in securing a patent, the applicants should not be allowed now to pick up their discard. But, despite the argument, the Office required the applicants to claim their specified means, and further to limit the combinations of their means by reciting the particular conditions that should result from the specified operation of their means.

Apart from the file-wrapper, we think the meaning of the patent as granted is sufficiently plain. To builders it said: "Make a coal in-

jector in substantial accordance with our drawings and description; attach it, as shown, to the existing rotary kiln; and you will have a complete operative device." To experienced cement burners: "Have about 20 pounds pressure in your air-tank; open the valve in the air nozzle until about 2 per cent. of the total volume of air going up the kiln and stack is coming from the pressure tank. This will start a fuel stream through tube 22, and at the same time create a vacuum equal to 5 or 6 pounds in fuel chamber 20. Outer air will be drawn in through ports 45 and later through ports 28 to envelop and hold relatively compact the fuel stream. The use of this limited volume of high-pressure air will cause the fuel to be injected in a long compact body so that a long, concentrated, intense flame will be produced. When the fuel stream reaches the kiln, it will be further enveloped by the air from conduit F so that the flame will not impinge upon the walls of the kiln and the cement materials. By regulating the valve in the air nozzle and the closable ports 45, you will readily learn to burn cement as well as you did with the oil injector." So in the claims the means for creating "a jet of air of high pressure and small volume" refer unequivocally to the pressure tank or its equivalent for delivering air under substantially 20 pounds pressure and to the needle-valved nozzle or its equivalent for discharging substantially 2 per cent. of the total volume. And equivalency cannot be predicated simply upon the general result of calcining cement in a rotary kiln by the use of powdered coal.

Appellee does not use the "jet of air of high pressure and small volume" for injecting the coal into the burner tube. Its blower produces a pressure of three or four ounces. It does not have the additional air to envelop and hold compact the fuel stream on its way into the kiln. All the air that carries the floating particles of coal into the kiln comes from the blower except that small portion which unavoidably gets in with the fuel; and this, of course, is not the "additional air" of the patent. Unenveloped the stream of mingled coal particles and air goes into the kiln. Appellee's air-jet provides from 20 to 30 per cent. of the total volume. This is hardly the "limited volume" of the patent's air-jet. Appellee does not have "a core of pulverized fuel" "to heat the walls of the furnace by radiation without impinging thereupon." Its flame rolls and darts on its way up the kiln and to the extent that impingement is restrained the result is the inevitable action of the kiln-and-stack draft. A similarity is urged in this: That physicists may now measure the pressure of the fuel stream as it emerges from the exit of the burner tube in appellants' and in appellee's structures and will find it substantially the same in each, about $1\frac{1}{2}$ or 2 ounces. And, since this is relatively a high pressure compared with that of the draft in a boiler plant, the high pressure of the fuel stream as it enters the kiln is what the patent meant by the term "high pressure." It remained for the experts to disclose the ranges of speed at which the fuel may be injected into the kiln while an efficient flame is calcining the cement. In the patent no disclosure was made of the amount of air that came through the fixed ports 28 or should be permitted to come through the adjustable ports 45—no specification of the volume and speed of the fuel stream at the exit

of the burner tube in relation to the volume and speed of the kiln-and-stack draft. None was needed. A competent cement burner, with the assurance that the tool would work, would adjust it until he had an efficient flame. But as to how to get a volume and speed of the fuel stream at the exit of the burner tube that would give an efficient flame the patent was definite and specific—impel your powdered coal by a 2 per cent. volume of 20-pound pressure air. If the ground of the patent should be permitted to be shifted to the volume and speed of the stream of mingled air and powdered coal as it enters the kiln necessary to produce an efficient flame, appellants would be given a monopoly of the calcining of cement materials in rotary kilns by the use of powdered coal.

On the facts as we find them our conclusion of law is that claims 1 to 7, inclusive, are limited by their own terms and by the prior art to high pressure and small volume means; and that claims 8 and 9, unless likewise limited, are void as seeking to monopolize the general result. And consequently there is no infringement.

Appellee's experimental use of high pressure and small volume means, long abandoned, would not warrant an injunction.

Hurry and Seaman were the first to burn powdered coal with commercially successful results in rotary kilns. So were the patentees in Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, Kokomo Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689, Cimiotti v. Fur Co., 198 U. S. 408, 25 Sup. Ct. 697, 49 L. Ed. 1100, and many other cases, the first to achieve their disclosed results. But that fact is not sufficient to shut off the public from using the common knowledge and the common skill in adapting other devices to produce the same result by a different principle of operation, especially where every underlying concept is old and has been fully disclosed.

The decree is affirmed.

NOTE.—Judge GROSSCUP participated in the hearing, consultations, and decision; but the opinion was not formulated until after his retirement.